IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOAN D. GREEN, et al.,                         Case No. 05-6227-HO

        Plaintiffs,                         ORDER

           v.

WORLD FAMOUS, INC.,

        Defendant.

This case originated in the Circuit Court of the State of
Oregon for Jackson County.  The case was removed to the United
States Bankruptcy Court for the District of Oregon.  After
plaintiffs filed the pre-trial order (PTO) in bankruptcy court,
the bankruptcy court transferred the case to this court for
trial.  Thereafter, defendant filed motions, in a single
document, for summary judgment on, or dismissal of, plaintiffs'
claims and damage allegations.  Defendant and plaintiffs filed
motions in limine directed at exhibits and witness testimony.
Plaintiffs filed no response to defendant's motions in limine.

The court heard oral argument on the motions.

Discussion

I.  <u>Defendant's Dispositive Motions</u>

Summary judgment is appropriate if there are no disputes of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Dismissal for failure to state a claim is proper only in the absence of a cognizable legal theory or sufficient alleged supporting facts.  <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir.1988).

Relying on the law of the case doctrine, plaintiffs argue that prior rulings in state and bankruptcy court allowing punitive damage allegations and denying a motion for summary judgment preclude consideration of defendant's dispositive motions.  Plaintiffs are incorrect.  <u>Russell v. Commissioner of Internal Revenue</u>, 678 F.2d 782, 785 (9th Cir. 1982).

A.  Undisputed Facts

Except where noted, the following facts are undisputed.

Plaintiffs signed a retail installment contract to purchase two automobiles on August 25, 1999.  The contract requires monthly payments of $427.25 on or before the 24th day of each month, beginning September 24, 1999.  Plaintiffs signed a separate document, which provides, "payment will be made on or before the date set or late fees will be charged, and . . . there will be no exceptions, as there is no grace period."  The

2 - ORDER

document also states, "DUE DATES CANNOT BE CHANGED AT ANY TIME."

The retail installment contract provides in part,

Insurance and maintenance.  I agree to keep the
property in good repair and not to sell it or otherwise
dispose of it.  I will keep the property insured with
property and liability coverage satisfactory to seller,
including without limitation comprehensive physical
damage, collision, fire and theft coverages.  I will
provide seller with proof of coverage.  I will also
name seller as the loss payee.

Plaintiff David Green signed an insurance verification form
promising to name World Famous as a loss payee on an insurance
policy providing comprehensive and collision coverage.
Plaintiffs executed a "Special Power of Attorney" authorizing
World Famous "to act as [] attorney-in-fact in signing my name to
any and all forms necessary for transfer of my rights, title and
interest . . ."

During the year and a half following August 25, 1999,
defendant had numerous oral communications with plaintiffs
concerning late payments and/or defaults.  Defendant contends it
sent plaintiffs a letter on March 2, 2000, stating that no more
late payments will be accepted, and all payments must be made on
or before the due date.

On March 9 or 10, 2001, defendant repossessed one of the
vehicles at plaintiffs' residence in Centralia, Washington.  On
March 10, 2001, defendant repossessed the other vehicle in
Central Point, Oregon.  Shortly after repossessing the vehicles,
defendant submitted a claim to plaintiffs' insurer for property

3 - ORDER

damage to the repossessed 1994 Mazda 929.  According to
plaintiffs, defendant repossessed the vehicles while plaintiffs
visited Central Point, Oregon to attend the funeral of David
Green's grandmother.  The parties dispute whether at the time of
repossession plaintiffs owed past due amounts or received notice
of defendant's intent to declare a default and repossess
plaintiffs' vehicles.

    B.  First Claim

    Defendant moves for partial summary judgment with respect to
plaintiffs' first claim for "wrongful repossession or
conversion."  "[A] creditor or vendor cannot declare the debtor
in default after repeatedly accepting delinquent payments and
then foreclose or repossess without first giving the debtor
reasonable notice of its intention to insist on strict compliance
in the future."  <u>Lee v. Wood Products Credit Union</u>, 551 P.2d 446,
448 (Or. 1976).  Repossession without reasonable notice is
sufficient to sustain a jury verdict of liability for conversion.
<u>Id</u>.

    As noted, the parties dispute whether defendant had a right
to repossession and whether it provided reasonable notice to
plaintiffs.  Plaintiffs rely on affidavits of Joan Green, which
they contend they filed in the Circuit Court for the State of
Oregon for Jackson County, prior to removal of this action to the
bankruptcy court.  Plaintiffs did not file the affidavits in this

court, but submitted them directly to chambers.  The court has no information that plaintiffs served defendant with the affidavits. Plaintiffs argue that the court must take judicial notice of the affidavits.  Neither the affidavits nor the motions to which they are purportedly attached are self-authenticating.  Fed. R. Evid. 902.  Joan Green's affidavits support plaintiffs' contentions that defendant repossessed their vehicles in the absence of plaintiffs' default and advance notice by defendant.

The court cannot take judicial notice of Joan Green's affidavits for the reasons noted above.  The affidavits nevertheless suggest there are likely genuine disputes of material facts as to whether plaintiffs defaulted or received notice of defendant's intent to repossess their vehicles.  On the presumption that Joan Green will testify consistent with her affidavits, the court will deny summary judgment to defendant on this claim.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (court may deny summary judgment if better course is full trial).

C.  First Claim - Damages

Defendant moves for dismissal of plaintiff's request for conversion damages consisting of the unpaid balance owed on the retail installment contract, plus finance charges.  Generally, the measure of damages for conversion based on a vendor's repossession is the market value of the vehicle plus interest.

5 - ORDER

Hall v. Work, 354 P.2d 837, 844 (Or. 1960).  This motion is
denied.  If necessary, the court will instruct the jury regarding
the proper measure of damages on this claim.

    D.  Second Claim

    Defendant moves to dismiss plaintiffs' second claim for
intentional infliction of emotional distress (IIED).  Defendant
argues that plaintiffs do not allege the intent, outrageous
conduct and severe emotional harm elements of this tort.
Defendant further contends there is a failure of proof of these
elements.

    Among other allegations, plaintiffs contend that defendants
routinely accepted their late payments, and acted in bad faith
and with malice or reckless regard of substantial risk of harm to
plaintiffs in illegally repossessing their vehicles while they
traveled hundreds of miles from home, and that defendant's
actions caused plaintiffs severe emotional injury.  The court is
unwilling to hold at this time that such alleged conduct is not
sufficiently outrageous as a matter of law to permit a verdict
for plaintiffs on this claim, although the court may reconsider
at the close of the plaintiffs' case.  In her affidavits, Joan
Green attested to the matters set forth in the PTO regarding
plaintiffs' IIED claim.  The court excuses the pre-trial failure
of proof, as noted above.  Defendant's motion to dismiss this
claim is denied.

6 - ORDER

E.  Third Claim

Plaintiff's third claim alleges defendant submitted a false claim and forged the signature of Joan Green to plaintiff's insurance company, resulting in cancellation of insurance, suspension of driver's licenses, increased costs of insurance, and mental suffering.  PTO at 12.  Plaintiffs also seek punitive damages and the cost of repairs to the 1994 Mazda 929.  Defendant moves to dismiss this claim, or in the alternative, for summary judgment.  Defendant argues that the alleged misrepresentations are not material because it had a right, as a loss payee on plaintiffs' policy, to claim a loss regardless of whether damage to the 1994 Mazda 929 occurred before or after repossession. Defendant further argues that plaintiffs do not allege that they changed position in reliance upon the alleged misrepresentations.

> The elements of a fraud claim are: (1) a
> representation; (2) its falsity; (3) its materiality;
> (4) the speaker's knowledge of its falsity or ignorance
> of its truth; (5) his intent that it should be acted on
> by the person and in the manner reasonably
> contemplated; (6) the hearer's ignorance of its
> falsity; (7) his reliance on its truth; (8) his right
> to rely thereon; and (9) his consequent and proximate
> injury.

Westerberg v. Mader, 48 P.3d 192, 195 (Or. App. 2002).

Plaintiffs' insurance policy is not among the exhibits. Plaintiffs' own exhibit 9 evinces that Allstate would cover the loss no matter who was driving when the accident occurred. Defendant's alleged representation that Joan Green damaged the

vehicle is not material.  Neither Allstate nor plaintiffs relied on the representation.  Defendant made no representations to plaintiffs with respect to this claim, and therefore did not induce plaintiffs do to anything.

Defendant is entitled to dismissal or summary judgment on plaintiffs' third claim.

F.  Fourth Claim

Plaintiff's fourth claim alleges defendant negligently damaged the 1994 Mazda 929 and "fail[ed] to exercise due and proper care under the circumstances in the repossession of the vehicle. . . ."  PTO at 14, ¶ A(2).  Defendant moves for summary judgment on this claim.  Defendant argues that even if it damaged the vehicle, a point it does not concede, it cannot be held liable because it was entitled to possession of the vehicle.  Plaintiffs' identify no evidence of the circumstances whereby the 1994 Mazda 929 sustained damage.  If the vehicle sustained damage in defendant's possession, this alone is insufficient to sustain a jury verdict on plaintiffs' negligence claim.  Defendant is entitled to summary judgment on plaintiffs' negligence claim.

G.  Fifth Claim

This claim is titled "Claim for Illegal Private Repossession Sale and Disposition of Collateral."  Plaintiffs contend that defendant's finance division sold illegally repossessed vehicles at commercially unreasonable prices to defendant's sales division

8 - ORDER

in a private sale without notice to plaintiffs in violation of
the Uniform Commercial Code (UCC).  Plaintiffs claim damages in
the amount of the unpaid balance on the retail installment
contracts, finance charges, and consequential damages including
lost wages, replacement transportation and increased insurance
premiums.  Defendant moves to dismiss plaintiffs' claim for
unpaid balances and consequential damages for failure to state a
claim.

A person is liable for damages in the amount of any loss
caused by a failure to comply with Chapter 79 of the Oregon
Revised Statutes concerning secured transactions.  Or. Rev. Stat.
§ 79.0625(2).  If the collateral is consumer goods, a debtor may
recover not less than $1,000 for a person's failure to comply
with the statutory requirements for disposing of collateral.  Or.
Rev. Stat. § 79.0625(3)(b).

> If the secured party resells the collateral in a
> commercially unreasonable manner, then the logical
> benchmark by which to measure the debtor's loss is the
> difference between the amount actually realized on
> resale and the among which would have been obtained had
> there been compliance with the Code's requirements.

4 White & Summers, Uniform Commercial Code § 34-19 (4th ed.).

In a proper case, consequential damages may also be
available for a creditor's failure to provide advance notice of
sale.  See e.g. Hemken v. First National Bank of Litchfield, 394
N.E.2d 868 (Ill. App. 1979).  To recover consequential damages,
the debtor must prove that the UCC violations were the proximate

9 - ORDER

cause of the damages.  <u>See</u> White & Summers, <u>supra</u>, § 34-19.

The court will deny defendant's motion to dismiss these damage allegations.  As necessary, the court will instruct the jury as to the proper measure of damages.

II.  <u>Def's Motion in Limine & Supplemental Motion in Limine</u>

In these motions, defendant challenges exhibits and testimony.  Plaintiffs filed no response.

A.  Exhibits

1.  Exhibit 9

The exhibit consists of computer screen printouts from Allstate documenting contacts regarding the claim submitted for damage to the 1994 Mazda 929.  The contacts span the period from March 13, 2001, through November 8, 2001.  Defendant argues that the exhibit may be incomplete because it does not contain information evincing why Allstate decided to cancel plaintiffs' policies.  Because plaintiffs' fraud claim is resolved by this order, this exhibit is irrelevant.

2.  Exhibit 10

Exhibit 10 consists of consumer complaints to the Oregon Department of Justice.  According to plaintiffs' amended exhibit list, complaints stem from "similar factual circumstances that gave raise to plaintiffs' claims."  The exhibit consists of subparts 10A-10G.  Defendant contends that these documents are irrelevant or unduly prejudicial.  The documents in exhibit 10

10 - ORDER

are inadmissible hearsay.

      3.  Exhibit 11

Exhibit 11 is described as the "deal file" for plaintiffs' vehicles. This exhibit has not been submitted. The amended exhibit list states that the documents are the subject of a trial subpoena. Defendant contends that the exhibit is irrelevant or unduly prejudicial. The court will defer ruling on this objection until exhibit 11 is produced.

      4.  Exhibit 12

Exhibit 12 is described as defendant's corporate tax returns for the two years preceding trial. This exhibit has not been submitted. The amended exhibit list states that the documents are in defendant's possession and will be the subject of a trial subpoena. Defendant contends that the exhibit is irrelevant or unduly prejudicial. Evidence of defendant's financial condition is relevant to the calculation of punitive damages, which may be available on plaintiffs' fraud and IIED claims.

      5.  Exhibit 13

Exhibit 13 consists of defendant's Chapter 11 Monthly Operating Reports and supplements for February through July 2004. Defendant contends that the exhibit is irrelevant or unduly prejudicial. These documents are stale evidence of defendant's financial condition at certain times. Updated information is required to calculate punitive damages. This objection is

11 - ORDER

sustained.

　　　6.  Exhibits 6, 7 and 8

Exhibit 6 is Allstate's form authorizing it to pay Star Body
Works.  Exhibit 7 consists of records from Star Body Works.
Exhibit 8 consists of photographs of damage to the 1994 Mazda
929.  Because plaintiffs' fraud and negligence claims are
resolved by this order, these exhibits are irrelevant.

　　B.  Testimony Regarding Defendant's Practices

Defendant moves to exclude the testimony of the following
witnesses regarding it's "general" or "fraudulent" business
practices:  Joan Green; Dave Green; Roger Lammi; Susan Wilson,
Scott Busse and Arlen Heath.  Defendant argues that testimony of
"fraudulent" business practices is inadmissible on the issue of
punitive damages.  Defendant further argues that plaintiffs
failed to identify Susan Wilson, Scott Busse and Arlen Heath
within the time designated in defendant's interrogatories and
request for production and the court-imposed discovery deadline.

The witnesses may not testify that defendant's business
practices are "fraudulent."  Testimony on the issue of punitive
damages is discussed below.  The court will not bar testimony of
Susan Wilson, Scott Busse and Arlen Heath for plaintiffs'
untimely disclosure of these witnesses.

　　C.  Expert Testimony

Defendant seeks to exclude expert testimony of Rob Cockburn,

12 - ORDER

CPA, Psychologist Michael Knapp, Ph.D., Tom Dzieman, J.D., Robert
Johnson, Jim Hatton and Eugene Ebersole, J.D., on the ground that
plaintiffs failed to timely identify the witnesses and furnish
expert reports.  To the extent these witnesses would provide
expert testimony, their testimony is barred for plaintiffs'
failure to furnish expert witness reports.  Testimony from Jim
Hatton regarding defendant's allegedly fraudulent insurance claim
is rendered irrelevant by this order.  Eugene Ebersole's
testimony is discussed further, below.

　　　D.  Consumer Witnesses & Eugene Ebersole, J.D.

　　　According to plaintiff, Daniel Wilkinson, Edward Stachel,
Deserri Stachel, Lewis Day, Amy Rigby and Julie McCurry will
testify regarding their experiences with defendant, which are
similar to those giving rise to plaintiffs' claims, in support of
plaintiffs' claim for punitive damages.  Eugene Ebersole would
testify as to prior investigations of defendant by the Oregon
Department of Justice (DOJ), compliance agreements between
defendant and DOJ, conditions that would violate those
agreements, and the lack of resources of DOJ to pursue penalties
for the type of conduct alleged by plaintiffs.  Defendant argues
that the testimony is irrelevant, because the facts and
circumstances of the case at bench are unique, including the
history of late or missed payments and returned checks.

　　　Evidence of prior conduct replicated by a defendant's

current transgression may be relevant to the calculation of punitive damages.  State Farm Mutual Auto. Ins. Co. v. Campbell, 538 U.S. 408, 423 (2003).  Plaintiffs' amended witness list lacks sufficiently specific information to determine whether the testimony of these witnesses is relevant.  Plaintiffs shall file a more detailed second amended witness list by March 9, 2007.

III.  Plaintiffs' Motion in Limine

Plaintiffs challenge testimony and exhibits with their motion in limine.

A.  Witnesses

Plaintiffs seek to exclude testimony of N. Kenneth Philips, Allen Shepard, and Roger Lammi, that is inconsistent with the alleged agreed fact that defendant damaged the 1994 Mazda 929 after repossession.  Because this order resolves the fraud and negligence claims, testimony regarding when the vehicle sustained damage is irrelevant.

B.  Exhibits

1.  Exhibit 101

This 19-page exhibit contains plaintiffs' payment history and defendant's phone contacts with plaintiffs and plaintiffs' family members between September 27, 1999, through March 12, 2001.  Plaintiffs object to employee comments on pages 5 and 7 to the effect that Dave Green's mother is untruthful, to page 9 as duplicative of page 8, and to defendant's alleged failure to

14 - ORDER

include a missing page in the exhibit covering the period November 10, 2000 to January 2001.

Evidence of the history of communications and dealings between the parties is relevant to the determination of whether defendant provided reasonable notice in January 2001 that it would require strict compliance with the terms of the contracts. The probative value of the exhibit is not substantially outweighed by any prejudicial effect of the employee's statement regarding David Green's mother, who is not a party or witness, although the statement may not be considered for its truth.

Page 9 appears to be an enlarged duplicate of page 8. Defendant contends that the exhibit is complete.  The objection is sustained to the extent that page 8 of this exhibit will not be received.

2.  Exhibits 103, 104, 105, 106, 107

Exhibit 103 includes 14 photographs of the damaged 1994 Mazda 929.  Exhibit 104 consists of 7 "photos of trailer used to haul cars."  Exhibit 105 is a document entitled "Inspection Report" dated March 8, 2001.  This exhibit describes damage to the right front fender, bumper and quarter panel consistent with photos contained in exhibit 103.  Exhibit 106 is Star Body Works repair file on the 1994 Mazda 929.  Because plaintiffs' fraud and negligence claims are resolved by this order, these exhibits are irrelevant, as is exhibit 107, which duplicates plaintiffs'

15 - ORDER

exhibit 6.

      3.  Exhibits 110 & 111

Exhibit 110 is a copy of plaintiff Dave Green's driving record.  Exhibit 111 consists of documents related to a citation issued to Dave Green on August 16, 2000 for violating the basic speed rule Green's subsequent failure to appear at court. Exhibit 113 is a copy of Joan Green's driving record.  Plaintiffs argue that the exhibits are irrelevant.  Because plaintiffs' claim that defendant's fraud resulted in suspension of his driving privileges is resolved by this order, these documents are no longer relevant.

Conclusion

Based on the foregoing and as provided herein, defendant's motion for summary judgment or dismissal [#74] is granted in part and denied in part; defendants' motion in limine [#87] and supplemental motion in limine [#118] are granted in part and denied in part; plaintiffs' motion in limine [#96] is granted in part and denied in part; plaintiffs' exhibits 1-5 are received; defendant's exhibits 100, 101 (except page 101-8), 102, 108 and 109 are received.

      IT IS SO ORDERED.

      DATED this __1st__ day of March, 2007.


                             __ s/ Michael R. Hogan_____
                             United States District Judge